# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLA MAE HOWARD, Administratrix of the Estate of Valeria Whetsall, deceased, o/b/o the Estate of Valeria Whetsall and o/b/o the wrongful death heirs, ET AL., <br> Plaintiffs, <br><br> vs. <br><br> RAMON C. RUSTIN, individually and in his official capacity as Warden of the Allegheny County Jail, ET AL., <br> Defendants. | Civil Action No. 06-00200 <br> Judge Nora Barry Fischer |

## **MEMORANDUM ORDER**

This matter is before the Court on the following motions: (1) Motion to Compel Bruce Dixon M.D. to Answer Questions at Deposition Upon Oral Examination [86]; (2) Motion to Compel Michael Patterson Sr., M.D. to Answer Questions at Deposition Upon Oral Examination[88]; and (3) Motion to Compel Lucille Aiken, M.D. to Answer Questions at Deposition Upon Oral Examination [89], all filed by Plaintiffs Ella Mae Howard on behalf of Valeria Whetsell, Edward Sartori, and Dianne Sartori ("Plaintiffs").[1]  On April 14, 2008, Defendant Ramon C. Rustin, Allegheny County, Dan Onorato, and John and James Doe filed their Response to Plaintiffs' Motions to Compel by Defendants' Rustin Onorato, John Doe, James Doe, and Allegheny County (Docket No. 90), in which they assert said disputes concern questions directed to individuals represented by separate counsel and hence they decline to substantively respond, except to assert that said motions are "inappropriate and should be denied." On April 18, 2008, Defendants Allegheny Correctional Health Services, Inc., Bruce Dixon, and Dana Phillips ("Allegheny Health Defendants") filed their

---

[1] Plaintiffs filed the initial two motions on April 7, 2008 and the last motion on April 8, 2008.

respective responses to Plaintiffs' motions. (*See* Docket Nos. 102, 103, & 105).

By way of brief background, Plaintiffs brought this action against all Defendants for wrongful death based on negligence and various civil rights violations, including, *inter alia*, §§ 1983, 1985, 1986 of Title 18 of the United States Code as well as the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs allege that the decedents Valeria Whetsell and Amy Lynn Sartori were inmates at the Allegheny County jail who contracted methicillin-resistant staphylcoccus aureus ("MRSA") due to substandard medical care at the Allegheny County jail. Whetsell and Sartori died on March 21, 2005 and March 20, 2005, respectively. The Court will address each motion to compel in turn.

I.  *Motion to Compel as to Bruce Dixon, M.D.*

On December 10, 2007, Plaintiffs' counsel deposed Defendant Bruce Dixon, the Chairman of the Board of Directors of Allegheny Correctional Health Services.[2] Counsel for the Plaintiffs seek an order from the Court compelling Defendant Dixon to re-appear for a deposition and answer questions regarding (1) whether he made a request to the Allegheny County legal department as to the release of information about infectious diseases; and (2) whether if Defendant Dana Phillips made a medical decision regarding inmates, the same would violate Allegheny County Health Services' policies and procedures. (Docket No. 86). Counsel for Allegheny Health Defendants objected asserting attorney-client privilege and an improper hypothetical question, respectively.

1.  *Attorney-client privilege*

At the deposition, Plaintiffs' counsel asked Defendant Dixon whether, at any time prior to

---

[2] Dr. Dixon never treated either of the Plaintiffs' decedents.

2005, he had made any request of the Allegheny County legal department to determine whether he could release information about infectious diseases to guards and/or inmates at the Allegheny County jail according to the parameters of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Counsel for Allegheny Health Defendants objected and instructed the witness not to answer the question based on attorney-client privilege. After counsel clarified the question to be only seeking an answer as to whether Defendant Dixon, in fact, made a request to the Allegheny County legal department, counsel for Allegheny Health Defendants again objected and instructed Dixon not to answer any questions related to his dealings with the Allegheny County legal department because the same posed a hypothetical question.

Before turning to the substance of the Allegheny Health Defendants' argument, as this Court has federal question jurisdiction over the instant matter, the Court will look to federal law. *See* Fed.R.Evid. 501 cmt. ("In nondiversity jurisdiction civil cases, federal privilege law will generally apply"). "Nonetheless, the Third Circuit and the state of Pennsylvania apply the same test in evaluating attorney-client privilege." *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) ("No one has argued, however, that there are any principles or rules of law as to the attorney client privilege unique to Pennsylvania that should control the resolution of our decision on these matters"); *see also Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 WL 2642525, at *2 n.2 (W.D. Pa. Sept. 14, 2006) (noting the lack of differences between Pennsylvania law and federal common law as to the attorney-client privilege). Thus, the Court will also look to Pennsylvania law for guidance.[3]

---

[3] Moreover, while Plaintiffs cite no case law in support of their motion, the Allegheny Health Defendants cite and rely upon Pennsylvania law in support of their assertion of the privilege.

The elements of the attorney client privilege under federal law are:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D. Mass. 1950)).[4] The burden of proving that information is protected by attorney-client privilege is on the party asserting the privilege. *Teltron,*

---

[4]

The Commonwealth of Pennsylvania has codified the attorney client privilege:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case the privilege is waived upon the trial by the client.

42 Pa. C.S.A. §5298. Furthermore, federal courts interpreting Pennsylvania law of attorney-client privilege have stated:

> Under Pennsylvania law, the elements of attorney-client privilege are the following: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar or court; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion of law or legal services or assistance in some legal proceedings, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client.

*Constand v. Cosby*, 232 F.R.D. 494, (E.D. Pa. 2006) (citing 42 Pa.C.S.A. § 5928; *Rhone Poulenc v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994)).

*Inc. v. Alexander*, 132 F.R.D. 394 (E.D. Pa. 1994).

While Defendant argues that the question posed to Dr. Dixon directly addresses a privileged communication between an agent of the county and the county legal department, courts have held that where the question at issue only seeks whether a communication actually occurred and not to the substance of the communication, the attorney-client privilege does not apply. *Constand*, 232 F.R.D. at 503. In particular, the Court noted the following:

> [T]he fact of whether the lawyers' gave plaintiff legal advice is not protected by the attorney client privilege and must be disclosed. *Rhone-Poulenc*, 32 F.3d at 862. 'Did any of these lawyers whom you talked to give you any advice?' merely requests a fact and would not reveal any client confidences in violation of the privilege. Therefore, plaintiff is required to answer question 3 of defendant's motion to compel because the fact of advice is discoverable. In the event plaintiff was provided advice by the lawyers, the substance of that communication is protected by the attorney client privilege. *Rhone-Poulenc*, 32 F.3d at 862 (listing elements of privilege).

*Constand*, 232 F.R.D. at 503. Here, counsel for Plaintiffs' question pertains only to "the fact of advice" and it does not inquire into the substance of any communication. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-396 (1981) (quoting *City of Philadelphia, Pa. v. Westinghouse Elec. Corp.*, 205 F.Supp. 830, 831 (E.D. Pa. 1962)) ("[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney") (alteration and emphasis in original); *see also Rhone-Poulenc*, 32 F.3d at 862 (same). Therefore, Plaintiffs' question pertaining to whether Dixon sought advice from the Allegheny County legal

5

department regarding any potential HIPAA violation in dissemination of information pertaining to infectious diseases *is* discoverable and Defendant Dixon shall re-appear for a deposition and answer the same.[5]

2.  *Hypothetical questions*

At the deposition, Plaintiffs' counsel also asked Dr. Dixon whether it would a violation of Allegheny County Health Services' policies if Defendant Phillips made a medical decision regarding the care of inmates. Counsel for Allegheny Health Defendants objected on grounds that the question was hypothetical in nature and that the witness did not have to answer. Plaintiffs contend that they are entitled to this information as it is relevant to reckless indifference and is within the scope of discovery.

Because Dr. Dixon has not been declared an expert witness to this point, his opinion testimony is governed by Federal Rule of Evidence 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701. A lay witness "cannot be asked to give an opinion in response to a question posed during discovery depositions unless it is based upon a complete statement of all relevant facts."

---

[5] At the deposition, Allegheny Health Defendants also asserted that Dr. Dixon need not answer this question insofar as it posed a hypothetical question; however, in their response, the Allegheny Health Defendants do not raise this argument related to this question (but only as to other questions regarding Defendant Phillips).

*Williams v. Thomas Jefferson University*, 54 F.R.D. 615, 617 (E.D. Pa. 1972). The hypothetical question posed must be based upon facts of record (i.e., testimony of another deponent or a document related to the testimony). *Id.* at 617.

Here, Plaintiffs fail to demonstrate that the question is "rationally based on the perception of the witness" and Plaintiffs fail to point to any facts of record upon which their counsel bases his hypothetical question. Hence, the question appears to call for an answer beyond the proper purview of this lay witness. *See also Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 356 (3d Cir. 1998) ("The essential difference between [Rule 701 and 702 testimony] ... is that a qualified expert may answer hypothetical questions") (citing *Teen-Ed, Inc. v. Kimball Int'l Inc.*, 620 F.2d 399, 404 (3d Cir. 1980)). Cases in accord *Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Engineering*, 57 F.3d 1190, 1213 (3d Cir. 1995); *Pelican Bait, Inc. v. CNA Ins. Co.*, No. CIV. A. 99-468, 2000 WL 1056452, at *3 n.6 (E.D. Pa. Aug. 1, 2000). As such, Plaintiffs' motion to compel Dr. Dixon to respond to this hypothetical question is denied, based on the record before this Court.

II.     *Motion to Compel Michael Patterson*

On December 14, 2007, Plaintiffs' counsel deposed Michael Patterson, Sr., M.D., an employee of Allegheny Correctional Health Services.[6] Counsel for the Plaintiffs seek an order from the Court compelling Dr. Patterson to re-appear for a deposition and answer questions regarding (1) whether standing water in the Allegheny County jail could spawn the development of MRSA; and (2) various questions related to the medical care given to Plaintiff decedent Amy Sartori. (Docket

---

[6] According to the Allegheny Health Defendants, Dr. Patterson was not involved with the treatment of Ms. Sartori. Plaintiffs do not argue to the contrary.

No. 88). Counsel for Allegheny Health Defendants objected asserting that, as to the former, the question calls for an expert opinion, and, as to the latter, the questions call for professional opinions. However, in its response brief, the Allegheny Health Defendants clarify that said questions call for an expert opinion. (Docket No. 105 at ¶¶8-9).

First, Plaintiffs' counsel asked whether standing water present in the jail could spawn the development of MRSA or other diseases. Counsel for Allegheny Health Defendants objected stating that said question sought expert testimony and that the witness was not an expert. The Court agrees. This question calls for "scientific, technical, or other specialized knowledge" as to MRSA that falls under Federal Rule of Evidence 703 and Dr. Patterson has not been offered as an expert witness.

Second, Plaintiffs' counsel asked Dr. Patterson to interpret a pulse oxygen reading on Sartori's medical chart and whether, given the pulse oxygen levels of Sartori and, if those were the only readings relating to that individual "prior to her going into arrest," said individual received adequate medical care between 3:25 p.m. and 6:00 p.m. on March 20, 2005. Counsel for Allegheny Health Defendants again objected asserting expert opinion. However, Plaintiffs' counsel rephrased the second question and asked Dr. Patterson for his opinion, based on a review of Sartori's medical records and in his position as medical supervisor, regarding the medical care she received between 3:25 p.m. and 6:00 p.m. on March 20, 2005, which drew another objection.

Once again, the Court finds that these questions call for an expert opinion in that they ask Dr. Patterson to comment on the medical care provided to Sartori on the day in question, which requires "scientific, technical, or other specialized knowledge" and Dr. Patterson has merely been offered as a fact witness. Hence, Dr. Patterson's opinion as to the level of medical care received by Ms. Sartori

on the date in question is beyond the scope of his testimony as a fact witness.

Third and finally, Plaintiffs' counsel asked Dr. Patterson whether, within his position as a supervisor for Allegheny County Health Services, he investigated the medical care given to Ms. Sartori. At the deposition, counsel for Allegheny Health Defendants objected as "asked and answered," but, in response to the pending motion, counsel asserts that the same calls for an expert opinion. The Court disagrees. Said question is factual in nature (i.e., did he investigate the medical care given to Ms. Sartori) and thus, considering that Dr. Patterson is a fact witness, the Court orders that he re-appear for his deposition and answer said question.

III. *Motion to Compel Louise Aiken*

On December 12, 2007, Plaintiffs' counsel deposed Lucille Aiken, M.D., a treating physician for Ms. Sartori at the Allegheny County jail. Counsel for the Plaintiffs seek an order from the Court compelling Dr. Patterson to re-appear for a deposition and answer questions regarding the following: (1) whether in her opinion as a physician at the Allegheny County jail infirmary, there were enough staff members to assist her in her duties;[7] (2) whether the likelihood of contracting MRSA infections increased in individuals with symptoms of open sores or a history of abscesses; (3) whether it is unexpected that there would be no entries in the medical chart of Ms. Sartori for approximately a two hour period; (4) whether a pulse ox level of 77% constituted an emergency situation; (5) whether, if Dr. Aiken had been notified of Ms. Sartori's medical condition earlier in the evening, she would have sent her to the hospital immediately upon being advised of said condition; (6) whether the

---

[7] After counsel for Allegheny Health Defendants objected, counsel for Plaintiffs followed up with the same question but in her capacity as a supervisor of the infirmary, to which counsel for Allegheny Health Defendants also objected.

length of time in the delay of care to a patient who suffers from chest pains and shortness of breath and vomits blood increases the risk of harm to that patient; and (7) whether certain people are more susceptible to contracting MRSA than other individuals. (*See* Docket No. 89; Docket No. 102 at ¶10). In response to each question, counsel for Allegheny Health Defendants asserts that the same calls for an expert opinion beyond the parameters of Dr. Aiken, a fact witness.

First, as to counsel for Plaintiffs' questions regarding Dr. Aiken's opinion as to the amount of staffing as well as to the lack of entries on Ms. Sartori's chart for a two hour period, because these questions call for answers rationally based on her perception as a witness, are helpful to her testimony as well as to facts at issue, and do not require scientific, technical, or other specialized knowledge within the meaning of Rule 702,[8] *see* Fed.R.Evid. 701, Dr. Aiken may provide her opinion as a lay witness in response to said questions.

Second, as to the remaining questions posed by Plaintiffs' counsel to Dr. Aiken and in dispute here, the Court finds that the same call for an expert opinion and thus, said questions are beyond the purview of Dr. Aiken, a fact witness. These questions require Dr. Aiken to provide specialized knowledge as to MRSA and to comment and to draw conclusions on hypothetical situations with the benefit of hindsight, i.e., if Dr. Aiken would have known of Sartori's medical condition, she would have sent her to the hospital earlier in the evening. These questions are more properly posed to an expert in the appropriate field, not to a treating physician offered as a fact

---

[8] Counsel for Allegheny Health Defendants argues that said questions call for specialized knowledge as to staffing and chart entries. The Court disagrees that such expert opinion is required; on the contrary, Dr. Aiken may testify, based on her knowledge of the infirmary practices and underlying facts as Ms. Sartori's treating physician, as to the level of staffing on the day in question and her chart.

witness. *See Calhoun v. Klingensmith*, Civil Action No. 07-86, 2007 WL 4205818 at *2 (W.D. Pa. Nov. 27, 2007) (citing *Frederick v. Hanna*, 2007 WL 853480 at *5-6 (W.D. Pa. Mar. 16, 2007)) (providing that "treating physicians may testify as fact witnesses regarding things 'within their knowledge, as opposed to offering expert opinion' such as 'their treatment, examination, and diagnosis of' the plaintiff"). While counsel may pose hypothetical questions to a lay witness, said questions must be based on facts of record, e.g., the testimony of a prior witness who has been subjected to cross-examination. *See Williams v. Thomas Jefferson University*, 5 F.R.D. 615, 617 (E.D. Pa. 1972). However, Plaintiffs' counsel has failed to point to any facts of record upon which he bases the foregoing proposed hypothetical questions to Dr. Aiken. *See Coxe v. Putney*, 26 F.R.D. 562, (E.D. Pa. 1961) (allowing hypothetical questions to treating physician as fact witness where the assumed state of facts posed in the question were based on facts of record from prior testimony).

IV. *Conclusion*

Accordingly, based on the foregoing, the Court orders the following:

(1) Plaintiffs' Motion to Compel Bruce Dixon M.D. to Answer Questions at Deposition Upon Oral Examination [86] is granted in part and denied in part. The Court grants the same to the extent that it seeks Dr. Dixon to re-appear for deposition and answer counsel for Plaintiffs' question whether he made any request of the Allegheny County legal department regarding the release of information about infectious diseases and HIPAA. The Court denies the same in all other respects.

(2) Plaintiffs' Motion to Compel Michael Patterson Sr., M.D. to Answer Questions at Deposition Upon Oral Examination [88] is granted in part and denied in part. The Court grants the same to the extent it seeks Dr. Patterson to re-appear for deposition and answer counsel for

Plaintiffs' question regarding whether he investigated the medical care given to Ms. Sartori. The Court denies the same in all other respects.

(3) Plaintiffs' Motion to Compel Lucille Aiken, M.D. to Answer Questions at Deposition Upon Oral Examination [89] is granted in part and denied in part. The Court grants the same to the extent it seeks Dr. Aiken to re-appear for deposition and answer counsel for Plaintiffs' questions regarding Dr. Aiken's opinion as to the amount of staffing as well as to the lack of entries on Ms. Sartori's chart for a two hour period. The Court denies the same in all other respects.

As to all the above motions, the Court denies Plaintiffs' requests for costs related to the same. The Court also orders that the above depositions be scheduled and concluded by May 30, 2008.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: April 30, 2008.

cc: All counsel of record.